# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
### MOBILE DIVISION

| | |
|---|---|
| VALLEY FORGE INSURANCE COMPANY and VALLEY FORGE INSURANCE COMPANY As Subrogee and Assignee of Killian Construction Company, and HOAR Program Management, LLC<br><br>   Plaintiff,<br><br>v.<br><br>FIREMAN'S INSURANCE COMPANY OF WASHINGTON, D.C., a Delaware Corporation and SAM C. FRANKLIN & SON, INC., A Tennessee Corporation,<br><br>   Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION CASE:<br>     1:17-cv-458 |

## VALLEY FORGE INSURANCE COMPANY'S ORIGINAL COMPLAINT

Plaintiff Valley Forge Insurance Company ("VFI") files this Original Complaint for Declaratory Judgment, Equitable Subrogation, Contractual Subrogation, Equitable Contribution, and Bad Faith and/or Vexatious Refusal to Pay. VFI seeks a declaration pursuant to 28 U.S.C.A. § 2201, as well as recoupment of costs of defense, investigation and the settlement amount that VFI paid on behalf of its named insured, Killian Construction Company ("Killian"), and its additional insured, HOAR Program Management, LLC ("Hoar"), as well as

1

extra-contractual damages, as set forth herein.  VFI is suing defendants in VFI's capacity as a subrogee and assignee of Killian and Hoar, and directly in its own capacity.  VFI alleges as follows:

## I.  PARTIES

1.      Plaintiff VFI is a Pennsylvania corporation with its principal place of business located at 333 South Wabash Avenue, Chicago, Illinois 60604.  At all material times hereto, VFI was authorized to do business in the state of Alabama.

2.      upon information and belief, Fireman's Insurance Company of Washington, D.C. ("FIC") was a corporation organized and existing under the law of the state of Delaware, having a principal place of business at 4820 Lake Brook Drive, Glen All, Virginia.  At all times material hereto, FIC was authorized to do business in the state of Alabama.  Based on information and belief, FIC does business as Berkley Southeast Insurance Group.

3.      Sam C. Franklin & Son, Inc. ("Franklin") is a corporation organized and existing under the law of the state of Tennessee, having its principal place of business at 2394 Wildwood Road, Maryville, Tennessee 37804.  At all times material hereto, Franklin was authorized to do business in the state of Alabama.

## II.  JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a), because VFI, Franklin and FIC are citizens of a different

states, and the amount in controversy exceeds $75,000.   Venue is proper in accordance with U.S.C. § 1391(b)(1)(2), because a substantial part of the relevant events occurred in this judicial district.

### III.  NATURE OF THE ACTION

5.     This lawsuit arose out of an underlying nuisance and negligence case, *William M. and Judy K. Ward v. Hoar Construction, LLC*, Cause No. 05-CV-2016-900659.00; in the Circuit Court of Baldwin County, Alabama (the "Underlying Suit").   The Underlying Suit arose out of the construction of a sports complex located in Foley, Alabama (the "Project").   Plaintiffs in the Underlying Suit included individuals who resided in homes adjacent to or near the Project (the "Underlying Plaintiffs").

6.     This lawsuit also arose out of Franklin and FIC's bad faith and/or vexatious refusal to defend Killian and Hoar in the Underlying Suit, as their primary insurer, and the bad faith failure of FIC and Franklin to settle the Underlying Suit within FIC's policy limits, thereby exposing Hoar and Killian to a judgment in excess of FIC's policy limits.

7.     The Underlying Plaintiffs alleged that large dust clouds blew from the project at issue onto and into Underlying Plaintiffs' homes, causing injury and damage to the Underlying Plaintiffs.   The dust clouds were allegedly created as a

30657284 v1

result of the dirt movement, excavation, filling, ditching, and grading, at the Project, all of which were Franklin's responsibility.

8.      On or about March 23, 2015, VFI's named insured, Killian Construction Company ("Killian"), entered into a contract with The Public Athletic and Sports Facilities of Foley, Alabama (the "Contract"), under which Killian was to act as the Design/Builder for the Project.[1]   Under the Contract, Killian was required to add Hoar as an additional insured to Killian's liability insurance policy, which had been issued by VFI.

9.      On or about April 15, 2015, Killian entered into a subcontract with FIC's named insured, Sam C. Franklin & Son, Inc. ("Franklin"), under which Franklin was required, in relevant part, to provide dust and erosion control and to assure proper drainage during the construction of the Project ("Franklin Subcontract").  Pursuant to the Franklin Subcontract, Franklin was required to add Killian, as well as the Owner [Hoar], as additional insureds to Franklin's liability insurance policy, on a primary and non-contributory basis.

10.      The Franklin Subcontract also includes an indemnity provision under which Franklin was required to indemnify, hold harmless and defend Killian [Contractor] and Hoar [Owner/Construction Manager] for damages arising out of Franklin's performance under the Subcontract or out of any omission of Franklin,

---

[1] The Public Athletic Sport Facilities of Foley, the Owner of the Project, retained Hoar as its agent and Project Manager for the Project.  For this reason, the terms Owner and Hoar are used interchangeable in this Complaint.

regardless of whether Killian and/or Hoar or any other indemnitee's negligence, breach of contract, strict liability, or any other breach of any duty, contributed to or caused the action, damage, loss or expense.

11.     Hoar and Killian qualified as additional insureds pursuant to the FIC Policy's Additional Insured Endorsement, which provided coverage for property damage and bodily injury caused in whole or in part by Franklin's acts or omissions prior to Franklin's completion of operations under the Franklin Subcontract.

12.     The claims at issue in the Underlying Suit arose out of and were caused, in whole or in part, by Franklin's alleged failure to provide dust and erosion control and Franklin's alleged failure to assure proper drainage.  Because the Underlying Plaintiffs' alleged damages arose, in whole or in part, out of Franklin's alleged work, Killian and Hoar qualified as additional insureds under the FIC Policy.

13.     Killian and Hoar's additional insured coverage under the FIC Policy was primary and non-contributory to any coverage afforded to Killian and Hoar by VFI.  As a direct result of FIC and Franklin's breach of their obligations, VFI was compelled to defend Hoar and Killian in the Underlying Suit and to pay one-hundred percent of the settlement of the claims at issue in the Underlying Suit.

14.    In failing to meet its obligations to defend Hoar and Killian and to settle the Underlying Suit within the FIC Policy limits, FIC and Franklin caused VFI to suffer damages for which recovery is sought in this complaint.

## IV.    FACTS COMMON TO ALL COUNTS

15.    In the Underlying Suit, Defendants' work allegedly involved a large amount of dirt movement, excavation, filling, ditching, and grading in the area of the Project near Underlying Plaintiffs' property.   According to Underlying Plaintiffs, Defendants' construction work caused a significant amount of dirt and dust to leave the Project site and invade Underlying Plaintiffs' homes.  Underlying Plaintiffs also maintained that, as a result of the construction work, their homes were constantly covered in red dirt and dust.  The dust clouds were allegedly so bad at times that all neighboring houses were completely hidden.

16.    Underlying Plaintiffs maintained that as a result of Defendants' tortious conduct, dust and dirt, in the form of red mud continued to inundate Underlying Plaintiffs' homes and property.   As a proximate result, Plaintiffs reportedly incurred damage in the form of devaluation of their property; loss of use and enjoyment of their property; loss rental value of their property; emotional distress and mental anguish; and other damages that were to be shown at trial.

17.    The Underlying Suit alleged that Defendants created a private nuisance by exposing their properties and occupants to obnoxious and disturbing

dust, dirt, and similar particulate and that defendants allowed the nuisance. According to Underlying Plaintiffs, Defendants' damages were proximately caused by the intentional, wanton, and willful creation and maintenance of the alleged private nuisance.  Underlying Plaintiffs asserted that Defendants' performance of their construction activities, which proximately caused Underlying Plaintiffs compensatory and punitive damages for which defendants were jointly and severally liable.

18.    Underlying Plaintiffs sought compensatory damages that were alleged to have been jointly and severally proximately caused by Defendants' negligence in regard to the performance of their construction activities.  It was also alleged that causing and creating the conditions set forth above was intentional trespass and proximately caused the damages at issue.

19.    Killian and Hoar formally tendered their respective defenses for the Underlying Suit to Franklin, on January 4, 2017, and to FIC, on March 16, 2017. FIC responded to Killian and Hoar's demands for defense on April 27, 2017, through a formal coverage position letter, in which FIC denied that Franklin and Hoar were additional insureds and indemnitees, due in relevant part, to Franklin's claims that Killian and/or Hoar were solely responsible for all dust control at the Project.

20.     Based on information and belief, FIC did not investigate the claims stemming from the construction of the Project and denied that Franklin could have caused significant amounts of dirt and dust particulate to leave the Project.  FIC and Franklin intentionally and in bad faith ignored the express terms of the scope of the Franklin Subcontract, the FIC policy and the facts alleged in the Underlying Suit.

21.     FIC also relied on several other purported coverage defenses, including but not necessarily limited to the pollution exclusion and the contractual liability exclusions as a basis for denying coverage to Hoar and Franklin. However, based on information and belief, FIC did not assert these exclusions as a basis for denying coverage to Franklin.

22.     FIC favored Franklin over its other insureds, Hoar and Killian.

23.     FIC defended Franklin, FIC's named insured in the Underlying Suit, while simultaneously refusing to defend and/or indemnify its other insureds, Hoar and Killian.

24.     Due to Killian and FIC's denial, VFI incurred 100 percent of Hoar and Killian's defense fees and costs, in the Underlying Suit, and incurred the costs of filing a Crossclaim, for defense and indemnify against Franklin in the Underlying Suit (the "Crossclaim"), pursuant to the Franklin Subcontract.

25.     Killian filed its Crossclaim against Franklin, on March 27, 2017, asserting causes of action for contractual indemnity, common law indemnity and breach of contract based on Franklin's breach of its obligation to "indemnify, hold harmless, and defend" Killian and Hoar for Underlying Plaintiffs' alleged damages, which undoubtedly arose out of Franklin's negligence in performing its dirt, dust and erosion control work pursuant to the Franklin Subcontract.

26.     Throughout the pendency of the Underlying Suit, Franklin repeatedly denied its defense and indemnity obligation to Killian and Hoar under the Franklin Subcontract, leaving VFI to defend and indemnify Killian and Hoar.

27.     Throughout the pendency of the Underlying Suit, FIC repeatedly denied its defense and indemnity obligation to Killian and Hoar as additional insureds, leaving VFI to defend and indemnify Killian and Hoar.

28.     FIC had numerous opportunities, including mediation in March 2017, while the Underlying Suit was pending, to settle the claims against Killian and Hoar within the FIC Policy's primary policy limits, but FIC refused to do so.

29.     With the trial date set for the first week of September 2017, VFI reached out to FIC and made a reasonable and good faith offer of settlement, on July 11, 2017. FIC refused to counter VFI's settlement offer but rather, on August 8, 2017, suggested that VFI and FIC attend mediation with just the defendants and coverage counsel present, in order to address the coverage issues, which are set

9

forth in the matter at hand.  FIC repeatedly offered, as it had numerous times before, that FIC was "ready to make a significant contribution" to the claims at issue in the Underlying Suit but refused to disclose said the amount.

30.    However, based on information and belief, the "significant contribution" amount was not disclosed to VFI until the week prior to trial on, and the amount was a mere fraction of the total amount at issue.

31.    With less than a month before the September 5th trial date and by the time FIC was finally "ready to make as significant contribution" to settlement at a formal mediation but was unwilling to negotiate without a formal mediation. However, Underlying Plaintiffs were not willing to attend a second mediation, in which the liability claims at issue in the Underlying Suit and the coverage issues, could be addressed.

32.    On or about September 1, 2017, merely days prior to trial, VFI settled the Underlying Plaintiffs' claims against all Defendants in the Underlying Suit (the "Settlement") for a confidential amount that is well in excess of the $75,000 jurisdictional amount in controversy.    VFI negotiated the Settlement with Underlying Plaintiffs without the assistance, contribution or participation of Franklin and/or FIC.

33.    As a condition of Settlement, Killian and Hoar expressly assigned to VFI all of their claims against FIC and Franklin arising out of the Underlying Suit,

10

which include but are not limited to the right to recover damages for breach of contract, breach of the duty to defend, breach of the duty to indemnify, negligence, breach of fiduciary duties, breach of the implied covenant of good faith and fair dealing, misrepresentation, unjust enrichment, bad faith and/or vexatious refusal to pay, bad faith refusal to settle, professional negligence, or any other action or theory recognized by law.

## V.    THE POLICIES

34.     VFI issued commercial general liability policy number 6020199556 to Killian for the policy period of October 1, 2015 to October 1, 2016 (the "VFI Policy").  Hoar qualified as additional insured in relation to the Underlying Suit.

35.     FIC issued commercial general liability policy number CPA 4276986-40 to Franklin for the policy period of August 28, 2014 to August 28, 2015 (the "FIC Policy").  The FIC Policy has a $1,000,000 any occurrence limit of liability and a $2,000,000 general aggregate limit of liability.  FIC renewed the FIC Policy for the policy period of August 28, 2015 to August 28, 2016.  Hoar and Killian qualified as additional insureds in relation to the Underlying Suit pursuant to the FIC Policies' Additional Insured Endorsement, as set forth below.

## VI.   ALLEGATIONS

**KILLIAN AND HOAR ARE ADDITIONAL INSUREDS ON THE FIC POLICY.**

36.    The FIC policy includes Contractors General Liability Ultra Endorsement (CL CG 04 43 11 10), which affords additional insured coverage to Killian and Hoar as follows:

## A. MISCELLANEOUS ADDITIONAL INSUREDS

**Section II –** Who Is An Insured is amended to include as an insured any person or organization (referred to as additional insured below) described in Paragraphs A.3.a through A.3.d. below when you and such an organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy, provided that:

*       *       *

3.  Only the following persons or organizations are additional insureds under this provision, with coverage for such additional insureds limited as     provided herein:

*       *       *

d.   Owners [Hoar] Or Contractors [Killian] For Whom You [Franklin] Are Performing Ongoing Operations

1.    Any person or organization for whom you are performing operations but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

a.  Your [Franklin's] acts or omissions; or

b.    The acts or omissions or those acting on your [Franklin's] behalf;

in the performance of your [Franklin's] ongoing operations for the additional insured [Killian and Hoar].

A person's or organization's status as an additional insured under this provision ends when your operations for that additional insured are completed.

37.     The Franklin Subcontract states in relevant part as follows:

The Contractor and, or Subcontractor [Franklin] agree to obtain, furnish and maintain in full force and effect without interruption during and throughout the entire term of this Contract, as cost of the Work, all of the insurance as specified hereinafter.  All such insurance shall be obtained from an insurance company or companies with an A.M. Best rating of at least 'A' (Excellent), Financial Size Category 'X' and which are authorized to engage in business in the state the project (for this Contract) is located.

*     *     *

Contractor [Killian] and Owner [Hoar] are added as an Additional Insured on a primary and non-contributory basis.  Additional Insured coverage shall be provided by ISO Additional Insured Endorsement CG 20 10 07 04 and (1) CG 20 37 07 04.

38.     Underlying Plaintiffs asserted that Franklin was the subcontractor responsible for dust control at the Project.  Underlying Plaintiffs complain of property damage caused by the dust and dirt, in the form of red mud that inundated their homes.  Underlying Plaintiffs complained of damages resulting from off-site erosion from the Project onto Underlying Plaintiffs' property and also complain that defendants failed to implement any effective, protective, preventative, or corrective measures to rectify the situation and/or to prevent further damage to Underlying Plaintiffs' homes.

39.     The Franklin Subcontract defined the scope of Franklin's work thereunder to include, in relevant part, dust control, erosion control, temporary drainage measures as recommended by the soils report, assurance of the proper drainage with the grading work, and installation of backfill trenches.  The claims at

30657284 v1

issue in the Underlying Suit were caused in whole or in part by Franklin's acts and omissions, as per the Franklin Subcontract.  Thus, FIC had a duty to defend and indemnify Killian and Hoar as additional insureds in accordance with the Franklin Subcontract and the FIC Policy's Additional Insured Endorsement.

40.    VFI is therefore entitled to a judicial declaration that FIC had a duty to defend and indemnify Killian and Hoar against the claims at issue in the Underlying Suit.  VFI is also entitled to recover all monetary amounts that VFI paid to defend and indemnify Killian and Hoar in relation to the claims at issue in the Underlying Suit.  VFI seeks all attorneys' fees and costs that VFI incurs in the present litigation.

**KILLIAN AND HOAR'S COVERAGE UNDER THE FIC POLICY WAS PRIMARY TO COVERAGE UNDER THE VFI POLICY**

41.    The FIC Policy afforded additional insured coverage to Killian and Hoar on a primary and non-contributory basis, pursuant to the following condition:

(2)  Paragraph 4.b. of Section IV – Commercial General Liability Conditions is deleted and replaced with the following:

b.  Excess Insurance

(1)  This insurance is excess over:

(a)  Any of the other insurance, contingent or on any other basis that is available to **the additional insured [Killian and Hoar] unless you [Franklin] and the additional insured [Killian and Hoar] have specifically agreed in writing that this insurance be primary.**  Then we will treat any other insurance maintained by the additional insured for injury or damage

14

covered by provision A. Miscellaneous Additional Insureds, except such other insurance as noted in Paragraph b.(1)(b) below, as excess to this insurance.

42.     The Franklin Subcontract required as follows:

2.  Coverage shall include:

Contractor [Killian] and Owner [Hoar] are added as an Additional Insured on a primary and non-contributory basis.  Additional Insured coverage shall be provided by ISO Additional Insured Endorsement CG 20 10 07 04 and (1) CG 20 37 07 04.

43.     Franklin and Killian specifically agreed in writing in the Franklin Subcontract that Killian and Hoar would be added as additional insureds to the FIC Policy on a primary and non-contributory basis.  Thus, pursuant to the express terms and conditions of the FIC Policy, FIC was to treat Hoar and Killian's coverage under the VFI Policy as excess to the FIC Policy and to defend Hoar and Killian just as it defended Franklin.

44.     The VFI Policy's relevant "other insurance" provisions state as follows:

**4.  Other Insurance**

If other valid and collectible insurance is available to the Insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

*          *          *

**b.  Excess Insurance**

**(1)**  This insurance is excess over:

(b) Any of the other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and complete operations, for which you have been added as an additional insured.

*     *     *

45.   The FIC Policy's relevant "other insurance" provisions state as follows:

## 2.   ADDITIONAL INSURED – PRIMARY AND NON-CONTRIBUTORY TO ADDITIONAL INSURED'S INSURANCE

The Other Insurance Condition in the **COMMERCIAL GENERAL LIABILITY CONDITIONS** Section is amended to add the following paragraph:

If the Named Insured has agreed in writing in a contract or agreement that this insurance is primary and non-contributory relative to an additional insured's own insurance, then this insurance is primary, and the Insurer will not seek contribution from that other insurance. For the purpose of this Provision 2., the additional insured's own insurance means insurance on which the additional insured is a named insured. Otherwise and notwithstanding anything to the contrary elsewhere in this Condition, the insurance provided to such person or organization is excess of any other insurance available to such person or organization.

46.   The respective other insurance provisions included in the FIC Policy and the VFI Policy were not in conflict.

47.   When read together, the other insurance provisions demonstrated that FIC's obligation to defend and indemnify Killian and Hoar as additional insureds was primary to any coverage afforded to Killian and Hoar under the VFI Policy.

16

48.   Because FIC's coverage for Killian and Hoar was primary to any coverage obligation that VFI could have had to Killian and Hoar, FIC breached the terms and conditions of the FIC Policy when FIC denied having any duty to defend and/or indemnify Killian and Hoar against the claims at issue in the Underlying Suit.

## FRANKLIN HAD A DUTY TO HOLD HARMLESS, INDEMNIFY AND DEFEND KILLIAN AND HOAR AGAINST THE CLAIMS AT ISSUE IN THE UNDERLYING SUIT.

49.   Franklin agreed to hold harmless, indemnify and defend Killian and Hoar against the claims at issue in the Underlying Suit pursuant to the indemnity provision in the Franklin Subcontract, which states as follows:

11.   **Indemnification.**   To the fullest extent permitted by law, Subcontractor (Franklin) shall indemnify, hold harmless, and defend at its own expense Contractor, Owner, Prime Contractor, Construction Manager, Architect, and their respective agents, employees and assignees (including litigation costs, OSHA fines assessed to the Contractor associated  with the work of the Subcontractor, and attorneys' fees) of any nature whatsoever, including but not limited to claims for or relating to injury, sickness or disease to any persons (including death), damages to property (including the lost use thereof and any consequential damages therefore), economic loss, liens or Project delays, which arise out of or are alleged to arise out of : a) the performance of Subcontractor's work; b) the Subcontractor's default under the Subcontract Agreement; and/or c) any act or omission of Subcontractor, its Subcontractors Material Suppliers, anyone directly or indirectly employed by them or anyone for whose acts they may be liable; regardless of strict liability, or any other breach of duty of any Indemnitee; provided, however, that Subcontractor shall not be obligated to indemnify an indemnitee for its sole negligence or willful misconduct where such indemnification is contrary to the law, but

17

otherwise it is the intent of the parties that Subcontractors shall indemnify the indemnities to the fullest extent permitted by law.

50.     The claims at issue in the Underlying Suit were alleged to have arisen out of and arose out of Franklin's performance of its work, which was the dust control, pursuant to the Franklin Subcontract, and Franklin's breach of the Franklin Subcontract.

51.     The Subcontract required Franklin to indemnify, hold harmless, and defend Killian and Hoar because the alleged property damage and bodily injury was caused by Franklin's failure to provide dust control at the Project and was not caused by Killian or Hoar's own sole negligence.

52.     Thus, VFI is entitled to a judicial declaration that Franklin had a duty to defend and indemnify Killian and Hoar in relation to the claims at issue in the Underlying Suit.  VFI is also entitled to recover all monetary amounts that VFI paid to defend and indemnify Killian and Hoar in relation to the Underlying Suit.

## VII.   CAUSES OF ACTION

### COUNT ONE

### Contribution From FIC

53.     VFI realleges and incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

54.     It is well established law that an insurer that has paid the entire amount of the claim may seek contribution from other insurers liable for the risk.

18

55.     FIC had a contractual obligation to defend and indemnify Killian and Hoar against the Underlying Suit, and that obligation was primary to any coverage obligation under the VFI Policy.

56.     FIC refused or otherwise failed to perform its contractual obligations including the duty to defend and indemnify Killian and Hoar in the Underlying Suit.

57.     As a result of FIC's breach of its duty to defend and indemnify Killian and Hoar, VFI defended and indemnified Killian and Hoar in the Underlying Suit.

58.     VFI is, thus, directly entitled to equitable contribution from FIC for the total amount that VFI paid to defend and indemnify Killian and Hoar in the Underlying Suit.

WHEREFORE, VFI demands judgment against FIC for all amounts that VFI paid to defend and indemnify Killian and Hoar in the Underlying Suit, plus interest and costs of court and all attorneys' fees and costs incurred in this litigation.

## COUNT TWO

### Equitable and/or Contractual Subrogation Against FIC

59.     VFI realleges and incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

30657284 v1

60.     Pursuant to equitable subrogation, the insurer that pays a loss caused by the actionable misconduct of a third party, becomes the owner of the claim against the third party.

61.     The VFI Policy also includes a contractual subrogation provision that states, "If the Insured has rights to recover all of part of any payment we have made under this Coverage Part, those rights are transferred to us.  The Insured must do nothing after loss to impair them.  At our request, the Insured will bring suit or transfer those rights to us and help us enforce them".

62.     Therefore, pursuant to the terms and conditions of the VFI Policy, VFI has become equitably and contractually subrogated to the claims, rights and demands of Hoar and Killian.  VFI, as Killian and Hoar's subrogee, now stands in the shoes of Killian and Hoar and has standing to initiate legal action against FIC in this proceeding.

63.     As a result of the Underlying Suit, FIC's refusal to defend and indemnify Killian and Hoar, VFI was forced to incur fees and costs on behalf of Killian and Hoar which were and are the obligation of FIC, in order to defend and indemnify Killian and Hoar in the Underlying Suit.   FIC had a contractual obligation to Killian and Hoar as FIC's additional insureds to defend and indemnify Killian and Hoar, but FIC willfully refused to do.

64.     VFI's payments of all fees and costs associated with the claims at issue in the Underlying Suit were not voluntary in that they were required for the protection of VFI's insureds, Killian and Hoar.  VFI made payment solely because FIC failed to meet its direct contractual obligations to Killian and Hoar.

65.     Pursuant to VFI's equitable and/or contractual subrogation rights, VFI as Killian and Hoar's subrogee and assignee, seeks 100% of the amounts paid by VFI to defend and indemnify Killian and Hoar in the Underlying Suit. Continental's subrogation claim is based on the Franklin Subcontract, and independently of Killian and Hoar's s right to be defended and indemnified as additional insureds by FIC pursuant to the FIC Policy, in relation to the Underlying Suit.

WHEREFORE, VFI demands judgment against VFI for all amounts that VFI paid to defend and indemnify Killian and Rabren in the Underlying Suit, including attorneys' fees, interest and costs of court.

## COUNT THREE

### Equitable and/or Contractual Subrogation Against Franklin

66.     VFI realleges and incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

67.     Pursuant to the doctrine of equitable subrogation, an insurer that pays a loss, which is ultimately caused by the actionable misconduct of a third party,

30657284 v1

such as Franklin's breach of contract, negligence and wrongful failure to indemnify, becomes the owner of the claim against the third party.  Thus, VFI owns Killian and Hoar's causes of action against Franklin, related to the Underlying Suit, pursuant to the doctrine of equitable subrogation.

68.    Additionally, the VFI Policy states that "If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us [VFI].  The insured, [Killian] must do nothing after loss to impair them.  At our request, the insured may bring 'suit' or transfer those rights to us to help enforce them."

69.    Therefore, pursuant to the terms and conditions of the VFI Policy, VFI has become equitably and contractually subrogated to the claims, rights and demands of Killian and Hoar.  VFI now stands in the shoes of Killian and Hoar and has standing to initiate legal action against Franklin in this proceeding.

70.    In the matter at hand, Killian and Hoar have expressly assigned to VFI all of their claims, including but not limited to the right to recover damages for breach of contract, breach of the duty to defend, breach of the duty to indemnify, negligence, breach of fiduciary duties, breach of the implied covenant of good faith and fair dealing, misrepresentation, unjust enrichment, vexatious refusal to pay, bad faith refusal to settle, professional negligence, or any other action or theory recognized by law.

71.     Thus, VFI owns, as Killian and Hoar's assignees, all Killian and Hoar's rights to their claims against Franklin in connection with the Underlying Suit.

72.     As a result of Franklin's failure to defend and indemnify Killian and Hoar in relation to the Underlying Sui and the claims that arose out of Franklin's work, VFI was obliged to incur fees, costs and settlement monies on behalf of Killian and Hoar, which were the obligation of Franklin.

73.     VFI's payments of all fees and costs associated with the Underlying Suit were not voluntary in that they were required for the protection of VFI's insureds.  VFI made payment solely because Franklin failed to comply with its direct contractual obligations to Killian and Hoar.

74.     Pursuant to Killian and Hoar's equitable or contractual subrogation rights, VFI, as an assignee and subrogee of Killian and Hoar, seeks 100% of the amounts paid by VFI to defend and indemnify Killian and Hoar in the Underlying Suit.

WHEREFORE, VFI demands judgment against Franklin for all amounts that VFI paid to defend and indemnify Killian and Hoar, including attorneys' fees, interest and costs of court in this litigation.

## COUNT FOUR

### Declaratory Judgment Against FIC and Franklin

75.    VFI realleges and incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

76.    Continental seeks a judicial declaration regarding its rights to contribution and subrogation for defense and indemnity amounts that VFI paid on Killian and Hoar's behalf for the claims at issue in the Underlying Suit.  Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. 2201, VFI seeks a judicial declaration that:

- Any property damage or bodily injury at issue in the Underlying Suit was caused in whole or in part by Franklin;
- Any property damage or bodily injury arose out of Franklin's work under the Franklin Subcontract;
- FIC had the primary duty to defend and indemnify Killian and Hoar as additional insureds under the FIC Policy;
- FIC must reimburse VFI for 100% of the defense and indemnity amounts that VFI expended on behalf of Killian and Hoar related to the Underlying Suit;
- Alternatively, VFI is contractually and/or equitably subrogated to Killian and Hoar's rights under the FIC Policy and thus, entitled to reimbursement from FIC for 100% of the defense and indemnity amounts that VFI expended on behalf of Killian and Hoar in relation to the Underlying Suit.
- Alternatively VFI is contractually and/or equitably subrogated to Killian and Hoar's rights under the FIC Policy and thus, as Killian's indemnitor under the Franklin Subcontract Franklin must reimburse VFI for 100% of the defense and indemnity amounts that VFI expended on behalf of Killian and Hoar in relation to the Underlying Suit.

30657284 v1

## COUNT FIVE

**By VFI Against FIC For Bad Faith and/or Vexatious Refusal to Pay By Assignment**

77.     VFI realleges and incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

78.     By refusing to defend Killian and Hoar and to settle the Underlying Suit, FIC acted wrongfully and in bad faith by failing to exercise FIC's honest judgment to effectually indemnify and save Killian and Hoar harmless from exposure to liability and judgment entered in excess of FIC's policy limits.

79.     In engaging in bad faith conduct, FIC failed to fully investigate and evaluate Underlying Plaintiffs' injuries, the extent of Franklin's liability, and/or deliberately refused to consider and/or disregarded the information in its possession concerning the damages at issue in the Underlying Suit, thereby deliberately ignoring the probability that a verdict and/or judgment against Killian and Hoar would exceed FIC's policy limits.

80.     In engaging in the wrongful and bad faith conduct, FIC intentionally disregarded Killian and Hoar's financial interests, and instead, sought to advance FIC's own financial interests ahead of Killian and Hoar's with the hopes of escaping FIC's responsibility pursuant to the FIC Policy.

81.     As a proximate legal result of FIC's bad faith conduct, VFI was forced to incur one-hundred percent of Killian and Hoar's defense costs and to

settle the case on Killian and Hoar's behalf.  VFI was forced to settle the matter on Killian and Hoar's behalf, in order to avoid a jury verdict in excess of the FIC Policy limits.

82.     As a result of Killian and Hoar's assignment of its rights against FIC and Franklin, VFI is entitled to seek enforcement of those rights of Killian and Hoar against FIC and to recover damage caused by FIC and Franklin.

## PRAYER FOR RELIEF

WHEREFORE, VFI pray for a judgment against FIC as follows:

1.     Damages in the sum to be proven at trial plus pre-judgment interest at a legal rate from the date of payment;

2.     Consequential damages suffered by VFI, pursuant to the assignment of Killian and Hoar's rights to VFI;

3.     Consequential damages suffered by VFI, according to proof at trial;

4.     Damages pursuant to Section 375.296 and 375.296 of the Revised Statues of Missouri and/or bad faith refusal to pay insurance benefits, pursuant to Alabama law;

5.     Attorney fees and expenses incurred by VFI in connection with the Underlying Suit;

6.     VFI's attorney fees and costs incurred in bringing this lawsuit;

7.     A judicial declaration regarding its right and obligations under the FIC Policy; and

8.     Reimbursement from FIC for all defense costs and fees that VFI incurred in relation to Killian and Hoar's defense in the Underlying Suit; and

9.     Reimbursement from FIC for the entire settlement amount that VFI paid in to settle all claims at issue in the Underlying Suit against the defendants.

*s/John C. Morrow*_____
John C. Morrow (ASB-9424-O77J)

OF COUNSEL:
BURR & FORMAN LLP
420 20th Street North, Suite 3400
Birmingham, Alabama 35203
T:  (205) 251-3000
F:  (205) 458-5100
jmorrow@burr.com

*s/Greta A. Matzen*_____
Greta A. Matzen (IL Bar #6307545)

ELENIUS FROST & WALSH
333 S. Wabash Avenue, 25th Floor
Chicago, Illinois 60604
T:  (312) 822-4963
Greta.matzen@cna.com

Attorneys for Plaintiffs
Valley Forge Insurance Company and Valley Forge Insurance Company as Subrogee and Assignee of Killian Construction Company, and Hoar Program Management, LLC

27

30657284 v1